IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TOMMIE NATHANIEL WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. 08-00303-CG-B |
| vs. | ) | CRIMINAL NO. 06-00086-CG-B |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Tommie Nathaniel White, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 76). This action has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8 of the Rules Governing Section 2255 Cases.[1] It is now ready for consideration. Having carefully considered Petitioner's motions, the memorandums in support thereof, the memorandum in opposition, and the record, the undersigned finds that no evidentiary hearing

---

[1] The Honorable United States District Judge Callie V.S. Granade presided over the trial of this case and imposed the challenged sentence. Judge Granade referred this matter to the undersigned Magistrate Judge for entry of a Report and Recommendation. The undersigned has reviewed the Petitioner's motions and related documents, the transcripts of the trial and sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade. Based upon that review, the undersigned makes the following report and recommendation.

is required[2], and recommends that Petitioner's motion be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Tommie Nathaniel White.

## I. **FINDINGS OF FACT**

On April 27, 2006, White was indicted for (1) conspiracy to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 (Count 1); (2) possession with intent to distribute 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1)(Count 2); (3) possession with intent to distribute 4.5 ounces of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 3); and (4) possession with intent to distribute 2 ounces of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 4). The indictment also contained a forfeiture provision. (Doc. 1).

Attorneys Dennis Knizley and John Williams entered appearances on behalf of White, and represented him during the trial of this case. The trial commenced on July 17, 2006. (Doc. 28). Following

---

[2] In § 2255 proceedings, an evidentiary hearing is not required in every case. For instance, "a district court need not hold an evidentiary hearing for 'patently frivolous claims or those which are based upon unsupported generalizations' or 'where the petitioner's allegations are affirmatively contradicted by the record.'" Greer v. United States, 2009 U.S. App. LEXIS 26424, *4 (11th Cir. 2009) (quoting Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)). However, if the petitioner alleges facts that, if true, would entitle him to relief, a district court should order an evidentiary hearing. Greer, 2009 U.S. App. LEXIS 26424; Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002).

several days of testimony, the jury began deliberations, and found White guilty of Counts 1 and 2, and acquitted him of Counts 3 and 4. The Government agreed to the dismissal of the forfeiture provision; thus, Counts 3 and 4, and the Forfeiture provision were dismissed. (Doc. 28).

Following the trial, attorneys Knizley and Williams requested permission to withdraw. Their request was granted, and Arthur Madden was appointed to represent White. (Doc. 35). A sentencing hearing was conducted on March 6, 2007. After hearing from several witnesses, including White, and from counsel for the parties, Judge Granade imposed a sentence of 400 months imprisonment on each Count, to be served concurrently. In addition, 10 years supervised release and a special assessment of $200 were also imposed. (Doc. 71, Sentencing Hearing Transcript).

On March 19, 2007, White, through counsel, filed a written Notice of Appeal (Doc. 60). In his direct appeal, White alleged that the district court erred in limiting the scope of his cross-examination of certain witnesses and in permitting the government to improperly bolster the credibility of those witnesses in violation of the Sixth Amendment. White also challenged his sentence and argued that the district court erred in applying the 100-to-1 crack-to-powder cocaine disparity in calculating his sentence; the district court misapplied a three-level manager/ supervisor enhancement; and that his 400-month sentence was unreasonable. See

(Doc. 75, Eleventh Circuit Opinion & Judgment). On March 21, 2008, the Eleventh Circuit Court of Appeals affirmed White's conviction and sentence, and the mandate of the appellate court issued April 22, 2008. (<u>Id.</u>)

On May 29, 2008[3], White filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[4] (Docs. 76, 77). White alleges several instances of ineffective assistance of trial and appellate counsel in support of his request for habeas relief. (<u>Id.</u>) First, White alleges that his trial counsel rendered ineffective assistance when counsel: (1) deprived him of a substantial defense; (2) failed to object to a fatal variance in the indictment; (3) failed to object to the Assistant U.S. Attorney's closing argument; (4) failed to request an "accomplice witness" jury instruction; (5) failed to seek "Beechum" findings; (6) failed to

_____

[3] Under the prison mailbox rule, the Court will assume that White actually delivered his motion to prison officials for mailing and filed his habeas petition on May 29, 2008, the date that it was signed and dated. <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001) (ruling that a pro se prisoner's § 2255 motion is deemed to be filed on the date it is delivered to prison authorities for mailing which, absent evidence to the contrary, is presumed to be the date the prisoner signed it). The Government concedes that the instant motion is timely. (Doc. 79 at 4).

[4] While White's motion was pending, he filed a Motion for a New Trial on January 8, 2009 (Doc. 87). The motion was denied by the district court, and the denial was affirmed on appeal to the Eleventh Circuit.(Docs. 96, 103). Additionally, White filed a Motion for Leave to Amend (Doc. 98). The undersigned has issued a separate Report and Recommendation (Doc. 106), which recommends the denial of the motion as futile.

4

object to the exclusion of polygraph evidence; and (7) failed to object to the misjoinder of counts in the indictment. Second, White alleges that his appellate counsel rendered ineffective assistance when counsel: (8) failed to challenge the sufficiency of the evidence; and (9) failed to raise the fatal variance on appeal. (Doc. 77). Respondent filed a Response in opposition to White's motion to vacate, set aside, or correct sentence alleging that White's § 2255 motion is due to be denied because the claims contained therein are frivolous, vague, and without merit. (Doc. 79).[5]

## II.  ANALYSIS

### A.    Standard of Review

Collateral review is not a substitute for direct appeal; thus, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its

---

[5] A "Reply Brief" was filed on October 6, 2008, which purported to be a reply to the Government's response to White's § 2255 motion. (Doc. 83). Subsequently, on October 14, 2008, White requested additional time in which to file a traverse to the Government's response. (Doc. 84).  On October 27, 2008, White requested that the "Reply Brief" filed on October 6, 2008, be stricken from the record and again requested additional time to reply to the Government's Response. (Doc. 86). White's request to strike the "Reply Brief" was granted, and he was permitted additional time to file a reply. (Doc. 95). However, to date, White has not filed a reply.

jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; <u>Thomas v. Crosby</u>, 371 F.3d 782, 811 (11th Cir. 2004); <u>Stone v. United States</u>, 2010 U.S. Dist. LEXIS 44345 (N.D. Ga. May 4, 2010)(citing <u>Hill v. United States</u>, 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes cause *and* actual prejudice from the alleged error, or that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Id</u>. at 1234. (citations omitted). A meritorious claim of ineffective assistance of counsel can constitute cause. <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000).[6]

**B.    <u>Ineffective Assistance of Trial Counsel Claims</u>**

As noted supra, White filed a motion to vacate, set aside, or correct sentence pursuant to § 2255 and supporting memorandum, on or

---

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

about May 29, 2008 (Docs. 76, 77). In his motion, he alleges seven (7) instances of ineffective assistance of trial counsel and two (2) instances of ineffective assistance of appellate counsel. According to White, his counsel's constitutionally ineffective assistance entitles him to the relief afforded by 28 U.S.C. § 2255.

In order to establish a claim of ineffective assistance of counsel, a petitioner is required to establish two things: "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant." Gordon v. United States, 518 F.3d 1291, 1297 (11th Cir. 2008) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross, 893 F.2d at 1290; see also Gallo-Chamorro v. United States, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").

"There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take." Gordon, 518 F.3d at 1301 (citations omitted); see also Dingle v. Sec'y for Dep't of Corr., 480

F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment"). The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." Stewart, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." Cross, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Gallo-Chamorro, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Cross, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Davis v. Terry, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

8

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy both prongs of the Strickland test. Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been."). Consequently, the court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." 466 U.S. at 697; Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998) (courts "are free to dispose of ineffectiveness claims on either of its two grounds"); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

"Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted). In addition, "the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

1. Claim One

In his first claim, White alleges that his trial counsel deprived him of a "substantial defense." (Doc. 77 at 2). As a threshold matter, the undersigned observes that aside from his conclusory assertion, White has not proffered any facts in support of his claim. Moreover, White's assertion is affirmatively contradicted by the record. A review of the record reflects that the main defense strategy was that the Government's case rested almost entirely on nine unreliable co-conspirators, all of whom had been convicted of drug offenses and were cooperating with the government in hopes of getting lighter sentences. The record also reflects that Mr. Knizely and Mr. Williams' overall performances during trial were entirely professional, thorough, and appropriately aggressive. Together, they formed integral parts of a very strong legal team before and during the trial. Both trial attorneys actively participated in tandem on White's behalf. <u>See</u> (Trial Transcripts, <u>passim</u>). In addition, the record reflects that they were knowledgeable of the facts of the case, made appropriate objections, and moved for judgment of acquittal at the close of the Government's case-in-chief and renewed the motion for judgment of acquittal at the close of all the evidence. (Docs. 25, 26).

Further, defense counsel were well-prepared for the Government's reliance upon Agent Tommy Loftis and the nine cooperating witnesses' testimony at trial and provided a thorough cross-examination of the Government's witnesses, and also presented

witnesses on White's behalf.  This record evidence belies White's claim that defense counsel failed to present a substantial defense during the trial of this case.  Because White has failed to overcome the presumption that counsel's conduct was reasonable and adequate, this claim must fail. See Strickland, 433 U.S. at 687-689;  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)("[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable.").

2. Claim Two

Interrelated with claim one is White's assertion, in his second claim, that "evidence at this trial demonstrates the existence of multiple conspiracies between movant and the nine drug customers who testified against movant," and that the Government failed to prove a single conspiracy involving several co-conspirators. (Doc. 77 at 3).[7] According to White, this resulted in a "conspiracy variance" and his trial counsel were deficient for failing to raise this issue. White's conclusory argument is devoid of merit.

"A  material  variance  between  an  indictment  and  the

---

[7] According to White, his case involved a "rimless wheel" conspiracy. (Doc. 77 at 3). A "rimless wheel" is a conspiracy in which various defendants enter into separate agreements with a common defendant, but the defendants have no connection with one another, other than the common defendants' involvement in the transaction. See United States v. Richardson, 532 F.3d 1279, 1288 (11th Cir. 2008). In such a case, there are as many conspiracies as there are spokes. United States v. Chandler, 388 F.3d 796, 807 (11th Cir. 2004).

government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." United States v. Moore, 525 F.3d 1033, 1042 (11th Cir. 2008). The Eleventh Circuit has emphasized that a conviction based on an allegation of a material variance between the charged indictment and the proof shown at trial will only be reversed where the variance was (1) material and (2) substantially prejudicial. United States v. Coy, 19 F.3d 629, 633 (11th Cir. 1994). Under this analysis, the court must determine (1) whether a reasonable jury, viewing the evidence in the light most favorable to the government, could have found beyond a reasonable doubt that a single conspiracy existed, and (2) whether the defendant suffered any substantial prejudice if more than one conspiracy did indeed exist. Id. In determining whether a reasonable jury could find only one conspiracy existed, the following factors are considered: "(1) whether a common goal existed, (2) the nature of the scheme underlying the crimes charged, and (3) the overlap of participants." Id. "Separate transactions are not necessarily separate conspiracies, so long as the conspirators act in *concert* to further a common goal." Moore, 525 F.3d at 1042. Moreover, "[i]f a defendant's actions facilitated the endeavors of other coconspirators or *facilitated the venture as a whole*, then a single conspiracy is shown." United States v. Chandler, 388 F.3d at 811 (citations omitted) (emphasis in original).

12

With respect to the prejudice prong, substantial prejudice is deemed to have occurred when:(1) the proof at trial differs so greatly from the charges in the indictment that the defendant is unfairly surprised and has an inadequate opportunity to prepare a defense, or (2) if there are so many defendants and so many separate conspiracies before the jury that there is a substantial likelihood that the jury transferred evidence from one conspiracy to a defendant involved in another conspiracy. Coy, 19 F.3d at 634. (quotation omitted). It is the defendant's burden to demonstrate prejudice. See United States v. Calderon, 127 F.3d 1314, 1328 (11th Cir. 1997).

During the trial of this case, the Government presented the testimony of cooperating witnesses Clarence Reed, Felton Dunham, Charles Thomas, Alfred James, Roderick Gulley, Seymour Irby, Douglas Hill, Terrance Dortch, and Phamous Hobbs who each detailed their involvement with White in furtherance of the goal of distributing powder and crack cocaine during the relevant time period. Moreover, the Government's evidence traced, through a series of controlled buys overseen by Agent Loftis, the powder and crack cocaine step-by-step from the dealers (or co-conspirators) back to White. In addition, in affirming White's conviction, the Eleventh Circuit found that the district court did not err in finding that White acted as a manager or supervisor in a criminal activity involving five or more participants, and noted as follows:

13

> The evidence at trial showed that White
> exercised supervisory authority over at least
> two individuals: an errand runner whose home
> was used for drug distribution (O.G.), and the
> female courier to whom drugs were duct-taped
> to avoid detection. In addition to those two
> individuals and White, at least five other
> individuals were also involved in the offense:
> Denham, two of the other witnesses at trial,
> and the two females who sold the drugs to them
> in Atlanta. Furthermore, White arranged drug
> transactions, negotiated sales, and hired
> others to work for the conspiracy.

(Doc. 75 at 31)[8]. The overwhelming evidence presented at trial was sufficient to allow a reasonable jury to conclude, beyond a reasonable doubt, that a single conspiracy existed. Accordingly, because there was no variance between the evidence of a single conspiracy and the indictment, White cannot show that trial counsel was ineffective for failing to object on this basis.

Additionally, assuming *arguendo* that there was a variance, aside from his bare and conclusory allegation, White has not attempted to show, much less demonstrate, that substantial prejudice resulted from any alleged failure on the part of his counsel. See United States v. Jones, 614 F.2d 80, 81-82 (5th Cir. 1980) (finding district court justified in dismissing petitioner's § 2255 claims when petitioner presented only conclusory allegations to support claims). Thus, White's instant challenge fails to show the harm necessary to succeed on an ineffective assistance of counsel claim.

---

[8] See United States v. White, 270 Fed. Appx. 824 (11th Cir. 2008) (unpublished).

<u>Strickland</u>, 466 U.S. at 687-688.

### 3. Claim Three

In his third claim, White alleges ineffective assistance of counsel because his trial counsel failed to object to the Government's closing argument, which referenced the "truth-telling" provisions contained in the cooperating witnesses' plea agreements. (Doc. 77 at 4). In other words, White argues that the Government improperly bolstered the veracity of the cooperating witnesses in its closing argument. White contends that because trial counsel did not object to the reference to the "truth-telling" provisions, he was denied a fair trial as the evidence against him "rested solely on unreliable witnesses."[9] (<u>Id.</u> at 5).

The record reflects that the AUSA included the following in her closing argument:

> Now, what I expect that you will hear a lot about --
> and the judge is going to talk to y'all about this, too,
> when she gives you her oral charge ... You will be able
> to read along with her and you can take it back with you
> for your deliberations. But she's going to explain to you
> that witness credibility is one of the things you will
> have to decide in this case. You will have to decide
> which witnesses you believe, whether you believe all of
> what they had to say or some of what they had to say or
> none of what they had to say. And one of the factors that

---

[9] According to White, had his trial counsel objected to the Assistant U.S. Attorney's ("AUSA") closing statement, "the judge should have sustained it; if matters had gone to[o] far to make a striking of the remarks an effective cure, the judge should have instructed that the promise [sic] in the cooperation agreement adds little to the truth telling obligation imposed by the oath...." (Doc. 77 at 4).

you have to consider in determining witness credibility is the interest that the witness might have in the case.

   You heard in this case, as we've been talking about since the trial started -- there was testimony from a lot of the people who were actually involved, and those people have plea agreements with the government. We put the plea agreements into evidence so you will have those and be able to see them and go over them to see all of the conditions and the consequences that result from those plea agreements.
...
   And so you will have to determine whether or not you want to believe the testimony of the witnesses. We suggest to you that in order to get firsthand testimony about what happens in a drug deal, those are going to be the only people that you're ever going to be able to identify who know who is involved, who was there, who had the drugs, who sold the drugs, who touched the drugs, where the drugs came from, and how they got there. So the government submits to you that these witnesses are the ones who can give you the best evidence, the firsthand evidence. And it's up to you to decide how much credibility you want to give that testimony.

   **The plea agreements create the need for those witnesses, the absolute necessity for them to be truthful with you. Because there are a lot of dire circumstances if they're not. And you heard testimony about that. You can see that in the plea agreements.**

   So all in all, when you objectively consider this evidence, the government submits to you that it has been proven to you beyond a reasonable doubt in this case as to the truth of each one of these charges. And we ask you now to find the defendants [sic] guilty.

(Doc. 70, pp. 12-13, Transcript of Closing Arguments) (emphasis added).

16

White's contention that the Government should not have been allowed to reference the "truth-telling" provision in its closing argument is merely another version of an argument that the Eleventh Circuit rejected during White's direct appeal. On direct appeal, White challenged the United States' emphasis on the "truth-telling" provisions of its witnesses' plea agreements during direct examination. Upon review, the Eleventh Circuit found that the district court did not err in allowing the Government to introduce the "truth-telling" language on direct examination because White's counsel had attacked the credibility of the Government's witnesses during opening statements. (Doc. 75 at 24) (citing United States v. Hilton, 772 F.2d 783, 787 (11th Cir. 1985) and United States v. Delgado, 56 F.3d 1357, 1368 (11th Cir. 1995) ("[I]f defense counsel attacks a witness's credibility during opening the prosecutor may rehabilitate the witness on direct examination. Specifically, a prosecutor may 'elicit testimony regarding the truth-telling portion of a cooperation agreement during direct examination.") (citation omitted)).

White's instant claim is nearly identical to a claim raised and rejected on direct appeal, and White has not proffered, much less demonstrated, any change in circumstances which would merit re-litigation of the claim in this collateral proceeding. Simply stated, White's attempt to couch this near identical claim as ineffective assistance of counsel adds nothing of substance which

17

would justify a different result. See <u>Moss v. United States</u>, 2010
U.S. Dist. LEXIS 38648, at *44 (S.D. Fla. Mar. 3, 2010) (observing
that a petitioner's attempt to disguise an adverse ruling on direct
appeal as an ineffective assistance of counsel claim was
impermissible in § 2255 motion); <u>See also</u> <u>Hobson v. United States</u>,
825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on
direct appeal precludes further review of the claim in a § 2255
motion), vacated on other grounds, 492 U.S. 913 (1989); <u>United
States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a
matter has been decided adversely to a defendant on direct appeal,
it cannot be re-litigated in a collateral attack under section
2255."); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir.
1981) (claims raised and disposed of in a previous appeal are
precluded from reconsideration in a § 2255 proceeding).

A review of the trial transcript reflects that the thrust of
defense counsel's opening statements, and the main defense strategy
was that the Government's cooperating witnesses were unreliable
because of the self-serving nature of their plea agreements. As
noted supra, the Eleventh Circuit previously determined on direct
appeal that the Government's questioning of cooperating witnesses
about the "truth telling" provisions contained in the plea
agreements was proper because defense counsel had opened the door
for this line of questioning by attacking the witnesses'
credibility. <u>United States v. Diaz</u>, 190 F.3d 1247, 1254 (11th Cir.

1999); Delgado, 56 F.3d at 1368 ("[I]f defense counsel attacks a witness' credibility during opening the prosecutor may rehabilitate the witness on direct examination. Specifically, a prosecutor may 'elicit testimony regarding the truth-telling portion of a cooperation agreement during direct examination.'") (citation omitted). Clearly, if the Government could reference the "truth telling" provisions during its examination of cooperating witnesses, it could likewise reference this same evidence in its closing statement. Accordingly, defense counsel was not deficient for not objecting to the Government's reference to the "truth telling" provisions in its closing statement.

4. Claim Four

In his fourth claim, White alleges that trial counsel was ineffective for failing to request an "accomplice witness" jury instruction. Specifically, White avers that "there was not an effective accomplice witness instruction given nor does the record show that counsel requested it." (Doc. 77 at 5). According to White, such a jury charge was needed because his entire case rested on accomplice testimony, and trial counsel's omission in this regard resulted in substantial prejudice to him. (Id.) The transcript reflects that the district court instructed the jury as follows:

> Now, in saying that you must consider all
> of the evidence, I do not mean that you must
> accept all of the evidence as true or
> accurate. You should decide whether you

believe what each witness had to say and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. Also the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?
...
The fact that a witness has been convicted of a felony offense is another factor you may consider in deciding whether you believe that witness.
...
The testimony of some witnesses must be considered with more caution than the testimony of other witnesses. For example, a witness who was using addictive drugs during the time he testified about may have an impaired memory concerning the events that occurred during that time. Also a witness who hopes to gain more favorable treatment in his or her own case may have a good reason to make a false statement because the witness wants to strike a good bargain with the government.

Also in this case the government called as witnesses persons charged with the same crimes as the defendant, with whom the government has entered into a plea agreement providing for the possibility of a lesser sentence than the witnesses would otherwise be exposed to. Such plea bargaining, as it's called, has been approved as lawful and proper

and is expressly provided for in the rules of
this Court. However, a witness who hopes to
gain more favorable treatment may have a
reason to make a false statement because the
witness wants to strike a good bargain with
the government. So while a witness of that
kind may be entirely truthful when testifying,
you should consider such testimony with more
caution than the testimony of other witnesses.

And, of course, the fact that a witness
has pled guilty to the same crime the
defendant is charged with is not evidence in
and of itself of the guilt of any other
person.
...
As to count one, you will note that the
defendant is not charged in that count with
committing a substantive offense; rather, he
is charged with having conspired to do so.
...
In order to establish a conspiracy
offense, it is not necessary for the
government to prove that the members of the
scheme had entered into any formal type of
agreement. Also, because the essence of a
conspiracy offense is the making of the scheme
itself, it is not necessary for the government
to prove that the conspirators actually
succeeded in accomplishing their unlawful
plan.

What the evidence in the case must show
beyond a reasonable doubt is, first, that two
or more persons in some way or manner came to
a mutual understanding to try to accomplish a
common and unlawful plan, as charged in the
indictment; and, second that, the defendant,
knowing the unlawful purpose of the plan,
willfully joined in it.

A person may become a member of a
conspiracy without full knowledge of all the
details of the unlawful scheme or the names
and identities of all the other alleged
conspirators. So if a defendant has a general
understanding of the unlawful purpose of the
plan and knowingly and willfully joins in that

plan on one occasion, that is sufficient to convict that defendant for conspiracy even though the defendant did not participate before and even though the defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one does not thereby become a conspirator.

(Doc. 70, pp. 43-49, Transcript of Jury Charge).

District courts have broad discretion in formulating jury instructions, provided that the charge as a whole accurately reflects the law and the facts. A conviction will not be reversed, on the basis of a jury charge, unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) In this case, the transcript reflects that the instructions given by the court, when considered as a whole, informed the jury that it must evaluate the credibility of the witnesses and consider whether the witnesses stood to gain anything from their testimony. The instruction also informed the jury what was required in order to establish a conspiracy. White presents nothing other than his conclusory allegation in support of his contention that his trial counsel was ineffective in failing to object to the Court's instruction. Stated

22

another way, White has offered nothing to demonstrate that the instruction, as given, was an incorrect statement of the law, that he was entitled to an alternative instruction, or that his trial counsel's failure to request an alternative instruction was deficient or affected the outcome of the case. Simply put, White has not shown that the instruction was inadequate or that he was prejudiced as a result thereof. Accordingly, his ineffective assistance of counsel claim must fail as it is wholly unsupported by the record.

### 5. Claim Five

In his fifth claim, White alleges ineffective assistance of counsel due to defense counsel's failure to properly object to evidence of extraneous acts occurring in 1994-1995. White contends that this evidence related only to his bad character, and that while his counsel challenged the testimony on relevancy grounds, he should have requested Beechum findings. According to White, with a proper objection, the referenced evidence would have been excluded under Rule 403. (Doc. 77 at 6).

The record reflects that cooperating witness Clarence Reed testified that he first met White in either Plateau or Mobile around 1994 or 1995, and that he was able to procure drugs from White at that time. (Doc. 47, pp. 55-56 (R. 55-56)). White's counsel objected as follows: "Your Honor, we object as to relevance. We're talking about '94-95. [The AUSA] has already

introduced the judgment as to the 404(b) evidence.[10] We object as to relevance. We're talking about a time frame of '94-95. The 404(b) evidence has already been introduced by way of conviction, and we object on the basis of relevance to the issues in this case." (Doc. 47, p. 56 (R. 56)). In response, the AUSA countered that the testimony "established the course of dealing with the defendant and this witness' knowledge of him and his ability to identify that subject. It's also admissible on the issues of motive, intent, and knowledge." (<u>Id.</u>) The court overruled the objection. (<u>Id.</u>)

The record also reflects that cooperating witnesses Felton Dunham and Terrance Dortch also testified, without objection, that they previously engaged in drug transactions with White on or around 1994-1995, or during the mid-nineties, as well as during the periods charged in the indictment. (Doc. 47, p. 90 (R. 90); Doc. 48, pp. 52-53 (R. 276-77)).

Evidence of prior bad acts, which include "crimes, wrongs [and] acts," may be admitted only for purposes other than proof of bad character. Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion which allows prior bad acts evidence unless it tends to

---

[10] A review of the record reflects that the Government filed a Notice of Intention to Offer Evidence Admissible Pursuant to Rule 404(b) on June 14, 2006 (Doc. 18). The Notice related to White's drug distribution conviction in <u>United States v. White</u>, Crim. No. 97-000160-RV (S.D. Ala. 1997), for drug activity during the 1996 through 1997 time

prove only criminal propensity. <u>United States v. Cohen</u>, 888 F.2d

770, 776 (11th Cir. 1998). This circuit's test for admissibility of

404(b) evidence was announced in <u>United States v. Beechum</u>, 582 F.2d

898 (5th Cir. 1978) (en banc),  and later elaborated upon in <u>United</u>

<u>States v. Miller</u>, 959 F.2d 1535 (11th Cir. 1992) (en banc):

> First, the evidence must be relevant to an
> issue other than the defendant's character;
> Second, the act must be established by
> sufficient proof to permit a jury finding that
> the defendant committed the extrinsic act;
> Third, the probative value of the evidence
> must not be  substantially outweighed by its
> undue prejudice, and the evidence must meet
> the other requirements of Rule 403.  <u>United</u>
> <u>States v. Delgado</u>, 56 F.3d 1357, 1365 (11th
> Cir. 1995).

When evidence of prior bad acts is inextricably intertwined with

evidence of the charged crime, however, the prior bad acts are

admissible as intrinsic, not extrinsic evidence, and Rule 404(b)

does not apply. <u>United States v. Fortenberry</u>, 971 F.2d 717, 721

(11th Cir. 1992).  Evidence of criminal activity other than the

offense charged is intrinsic to the offense when the evidence is

"(1) an uncharged offense which arose out of the same transaction

or series of transactions as the charged offense, (2) necessary to

complete the story of the crime, or (3) inextricably intertwined

with the evidence regarding the charged offense." <u>United States v.</u>

<u>Ellisor</u>, 522 F.3d 1255, 1269 (11th Cir. 2008) (quotation marks and

citations omitted). The intertwined evidence is admissible if it

---

frame.

tends to explain the context, motive, and set-up of the crime and is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985).

In United States v. Muscatell, 42 F.3d 627, 630 (11th Cir. 1995), the Eleventh Circuit held that testimony regarding a continuing course of conduct "involving the same principal actors, in the same roles, employing the same modus operandi," was properly admissible as intrinsic evidence, despite the fact that some of the acts occurred outside the time frame of the charged offenses. Id. at 630-31. The Court explained that "[o]ther transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." Id. at 631 (quotation omitted). The Court also observed that "evidence of prior drug dealings is highly probative of intent in later charges of conspiracy to distribute a controlled substance." Id. (quoting United States v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir. 1993)) cf. United States v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir. 1993) ("[E]vidence of prior drug dealings is highly probative of intent in later charges of conspiracy to distribute a controlled substance.").

In this case, it is undisputed that the indictment charged conduct which occurred during the 2004-2005 time frame while the

testimony in question related to uncharged conduct which occurred in the 1994-1995 time frame. At trial, defense counsel sought unsuccessfully to challenge Clarence Reed's testimony about drug dealing with White during 1994-1995 on relevancy grounds. The objection was overruled after counsel for the Government argued that the evidence demonstrated the course of dealings between White and the witnesses as well as motive, intent and knowledge. Based on a review of the record evidence, it is clear that evidence regarding White's past dealings with the cooperating witnesses was intrinsic evidence which explained the circumstances under which the witnesses became acquainted with White and was highly probative of intent with regard to the later drug conspiracy charges. Moreover, there is nothing in the record which suggests that the probative value of this evidence was outweighed by undue prejudice to White.  Because the evidence was admissible, White cannot establish that his counsel was ineffective for not raising a meritless objection to the evidence. <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").  Accordingly, White is not entitled to habeas relief on this claim.

6. Claim Six

In his sixth claim, White contends that his counsel "failed to properly object to the exclusion of the polygraph examination" of

cooperating witness Felton Denham. (Doc. 77 at 6-7). According to White, defense counsel's failure deprived him of a fair trial and an adequate defense. (Id. at 7). The record reflects that the Government filed a motion in limine (Doc. 24) seeking to prohibit any reference to the polygraph examination, which was administered pursuant to the plea agreement and which indicated that Denham provided a deceptive answer. As support for its motion, the Government maintained that Denham's deception involved a matter unrelated to Denham's anticipated testimony against White. (Id.)

During trial, outside the presence of the jury, the trial court advised counsel that she did not think, based upon United States v. Hilton, 772 F.2d 783 (11th Cir. 1985), that the polygraph examination was admissible. Later in the trial, in conjunction with Denham's testimony, the trial court, at sidebar, advised counsel that under current Eleventh Circuit precedent, polygraphs are admissible under limited circumstances, and that those circumstances were not in this case. The Court also held that the probative value of the polygraph evidence was outweighed by the potential for jury confusion. Defense counsel did not challenge the Court's ruling regarding the exclusion of the polygraph evidence, but sought permission to question Denham about whether he had violated the plea agreement. The court held that because the Government would not be able to explain the violation given the exclusion of the polygraph evidence, the jury would be left to

improperly speculate. Thus, defense counsel's request was denied.(See Doc. 47 at 87-88).

On direct appeal, White argued that the trial court erred, in violation of the Confrontation Clause, by preventing his counsel from questioning Denham about whether he had violated the plea agreement. The Eleventh Circuit noted that White had not challenged the trial court's decision excluding the polygraph evidence, and that neither party had argued that any of the prerequisites for admission of the polygraph evidence were met. (Doc. 75, p. 19, n.2). The Court went on to find no confrontation clause violation, and noted that White's counsel was still able to elicit the same information by way of alternative questioning and that the jury was exposed to sufficient facts to evaluate Denham's credibility. The Court further held that to the extent White was challenging the limitation of questioning on some other basis, the district court properly held that the requested questioning would have required indirect reference to the "properly excluded polygraph evidence". (Doc. 75, pp. 20-21, n. 3). The appellate court also held that White's counsel was still able to elicit a response to a similar question, and that the district court did not abuse its discretion in denying the request to question Denham about whether he had violated the agreement. (Id.)

Given the District Court's ruling excluding the polygraph evidence, and the Eleventh Circuit's observation that the evidence

was properly excluded, there is simply no basis for White's claim that defense counsel was ineffective for failing to object to the exclusion of the polygraph evidence. White has not asserted, let alone established that any of the prerequisites for admission of polygraph evidence were met. *See* United States v. Piccinonna, 885 F.2d 1529, 1536 (11th Cir. 1989)(en banc). Moreover, as noted supra, the record reflects that White's counsel sought to get around the exclusion by seeking to question Denham about whether he had violated the terms of his plea agreement. Notwithstanding the denial of their request, White's counsel was still able to elicit the same information by way of alternative questioning, and was able to present the jury with sufficient facts to enable them to evaluate Denham's credibility. (See Doc. 75, p. 21). Because the polygraph evidence was properly excluded, White cannot establish that his counsel was ineffective. Thus, his sixth claim must fail.

7. Claim Seven

In his claim seven, White alleges that "counsel was ineffective for failing to move for a severance of counts 2, 3, and 4." (Doc. 77 at 7). White was indicted on four counts: (1) conspiring to knowingly possess with intent to distribute crack cocaine; (2) knowingly possessing with intent to distribute 500 grams of cocaine; (3) knowingly possessing with intent to distribute approximately 4.5 ounces of cocaine; and (4) knowingly possessing with intent to distribute approximately two (2) ounces of cocaine. The jury

convicted White on Counts 1 and 2, and acquitted him on Counts 3 and 4.

To secure a severance of charges in an indictment, a defendant must establish (1) that joinder of the charges in the indictment was not proper and (2) that even if joinder was initially proper, he will be prejudiced by their continued joinder for trial to such an extent that the court can offer no protection. United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993). The second inquiry requires the court to assess whether under all the circumstances, the jury can follow limiting instructions and can appraise the evidence against the defendant on each count separately. Id. at 386-87.

Having carefully considered the matter, the Court finds that counsel did not act deficiently in failing to move for a severance, as a motion to sever was not legally or factually warranted. It is clear that the charges were properly joined in the indictment under Fed. R. Crim. P. 8(a), as it permits joinder of offenses "if the offenses charge . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The counts in the indictment were of the "same or similar character" and were "parts of a common scheme or plan" to distribute cocaine and crack cocaine. Furthermore, it is clear that White was not prejudiced by the joinder of the charges because the jury in fact found him not guilty

31

on counts 3 and 4, which "demonstrates that the jury instructions offered sufficient protection against prejudice and that the jury considered each count separately." United States v. Galdos, 308 Fed. Appx. 346, 358 (11th Cir. 2009). "An attorney never acts deficiently in failing to file a motion which is frivolous." United States v. Shepard, 2009 U.S. Dist. LEXIS 77133, *15 (N.D. Ga. July 28, 2009). Accordingly, White's claim must fail because a motion to sever would have been frivolous in this case.

C.    Claims Against Appellate Counsel[11]

The standards applicable to White's claims of ineffectiveness of trial counsel under Strickland apply equally to claims of ineffective assistance by appellate counsel. See Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). To prevail, White must show that appellate counsel was objectively unreasonable in not raising the two issues he contends should have been raised and that he was prejudiced by his attorney's substandard performance. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

Additionally, on appeal, counsel need not raise issues that he reasonably concludes will not be considered on the merits by the appellate court. Francois v. Wainwright, 741 F.2d 1275, 1285 (11th Cir. 1984). The decision to raise select issues while omitting

---

[11] The record reflects that White's counsel during his direct appeal was Attorney Arthur Madden.

others is presumed to have been based on reasonable professional judgment. Because effective appellate advocates are expected to winnow out weaker arguments, even when they might be meritorious, appellate counsel does not perform deficiently merely by failing to raise every non-frivolous issue on appeal, provided that the strategic decision not to raise a particular issue was reasonable under the circumstances. Jones v. Barnes, 463 U.S. 745, 753-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). Cf. Heath v. Jones, 941 F.2d 1126, 1130-31 (11th Cir. 1991) (finding appellate counsel performed deficiently by raising one issue in a six page brief in a highly publicized capital case). Since none of White's contentions have arguable merit, counsel was not ineffective in failing to pursue them on appeal.

First, White contends appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim. (Doc. 77 at 8). While appellate counsel did not raise a sufficiency of the evidence argument on appeal, White has failed to establish that such an omission was objectively unreasonable in light of the evidence presented during trial. When considering the sufficiency of evidence, both the district court and the appellate court view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the government. If, when so viewed, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt, a motion for judgment

of acquittal must be denied. <u>United States v. Alejandro</u>, 118 F.3d 1518, 1521 (11th Cir. 1997); <u>United States v. White</u>, 611 F.2d 531, 536 (5th Cir. 1980). "A motion for judgment of acquittal is a direct challenge to the sufficiency of the evidence presented against the defendant."[12] <u>United States v. Aibejeris</u>, 28 F.3d 97, 98 (11th Cir. 1994).

The record reflects that trial counsel made an oral motion for judgment of acquittal at the end of the Government's case and later renewed the motion at the close of all the evidence; however, the district court found sufficient evidence to deny both motions. (Docs. 25, 26). As noted above, the Government presented significant evidence from cooperating witnesses as well as the testimony from investigating Agent Loftis. Additionally, the jury, which had the opportunity to assess the credibility of the witnesses and consider the evidence in context, found that the evidence proved beyond a reasonable doubt that White was guilty of counts 1 and 2. Given this evidence, there was no reasonable probability that a sufficiency of the evidence challenge would have prevailed on appeal. Additionally, this Court cannot conceive of any argument appellate counsel could have successfully pursued regarding the sufficiency of the evidence at trial. As a result, White has not

_____

[12] Rule 29(a) of the Federal Rules of Criminal Procedure states that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for

shown deficient performance or prejudice, and therefore is entitled
to no relief on this claim.

Next, White argues that appellate counsel was ineffective for
failing to challenge the alleged fatal variance, or claim two, on
appeal. (Doc. 77, pp. 8-9). This second ineffective assistance of
appellate counsel claim also fails. Because White's ineffective
assistance of trial counsel claim relating to the alleged fatal
variance is without merit, appellate counsel's decision not to
pursue this claim on appeal was certainly not a significant
omission. See Delgado v. United States, 2007 WL 623801, *5 (S.D.
Ala. Feb. 23, 2007) ("[Petitioner's] ineffective assistance of trial
counsel claim lacks merit. It likewise follows that his appellate
counsel was not ineffective for failing to raise this nonmeritious
claim."). In other words, because White's claim that the evidence
did not support his conspiracy conviction as charged in the
indictment was rejected, the argument that his appellate counsel was
ineffective because he failed to raise this claim on appeal is
likewise rejected. White has not demonstrated that appellate counsel
was objectively unreasonable for failing to pursue this issue on
appeal, nor can he establish prejudice arising from counsel's
performance. See Strickland, supra.

D. Request for an Evidentiary Hearing (Doc. 77 at 9)

A habeas court must order a hearing to determine the issues and

which the evidence is insufficient to sustain a conviction."

findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...." 28 U.S.C. § 2255(b). White "is entitled to an evidentiary hearing on [his] claim of ineffective assistance [of counsel] if [he] alleges facts which, if proven, would entitle [him] to relief." Ramirez v. United States, 260 Fed. Appx. 185, 187 (11th Cir. 2007) (unpublished). "A district court, however, need not conduct an evidentiary hearing if it can be conclusively determined from the record that there was no denial of effective assistance of counsel." (Id.)

Simply stated, the undersigned is not convinced that an evidentiary hearing would either further the interests of justice or comport with the considerations of judicial economy. Indeed, no evidentiary hearing is required where, as here, a petitioner's claim is "affirmatively contradicted by the record," is otherwise capable of resolution based on the existing record, or is "patently frivolous" for some other reason. See Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002); Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983). Here, it is clear that White's contentions are unsupported by the record or without merit. "[M]erely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible" do not beget an entitlement to an evidentiary hearing. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal citations omitted); see also

36

<u>Lynn v. United States</u>, 365 F.3d 1225, 1239 (11th Cir. 2004).  As such, there is no need for an evidentiary hearing to be held in this case.

E. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability ("COA") in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is being denied on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); <u>see also id.</u> at 483- 84, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under

<u>Barefoot</u>, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); see <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to Petitioner's assertions of ineffective assistance of counsel, reasonable jurists could not debate whether White's § 2255 motion to vacate should be resolved in a different manner or that the Sixth Amendment issues presented are adequate to deserve encouragement to proceed further. Accordingly, White is not entitled to a certificate of appealability, and any motion for leave to appeal in forma pauperis should likewise be denied.

## IV.    <u>CONCLUSION</u>

Based on the foregoing reasons, the undersigned Magistrate Judge is of the opinion that White's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be denied, without an evidentiary hearing, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner

38

Tommie Nathanial White.  Further, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability and that any motion for leave to appeal in forma pauperis should likewise be denied. It is so recommended.

The attached sheet contains important information regarding objections to this Report and Recommendation.

DONE this the **11th** day of **February, 2011.**

**/S/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. *Objection*.  Any party who objects to this recommendation, or anything in it, must, within fourteen days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[13] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   *Transcript (Applicable Where Proceedings Tape Recorded).*

---

[13]The Court's Local rules were amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.